UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michelle Morson,

Plaintiff,

vs.

The Independence Party,
Richard McCluhan, Richard
McCluhan & Associates,

Defendants.

Civil No. 00-1267 JMR/FLN

**ORDER AND REPORT AND RECOMMENDATION**

---

Nicholas May, Esq., for Plaintiff.
Michael Padden, Esq., for Defendant The Independence Party.
Mathew Morgan, for Defendants Richard McCluhan and Richard McCluhan and Associates.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on May 18, 2001, on: (1) Defendant the Independence Party's Motion for Summary Judgment [#17]; and (2) Plaintiff's Motion to Amend the Complaint to Assert a Claim for Punitive Damages [#27]. For the reasons which follow, this Court will recommend the motion of The Independence Party be granted, and will order that plaintiff's motion to amend be granted as to the remaining defendants.

## I. FACTUAL BACKGROUND

This action arises from the alleged sexual harassment, assault and battery inflicted on Plaintiff Michelle Morson ("Ms. Morson") by Richard McCluhan ("Mr. McCluhan"). Mr. McCluhan owns Richard McCluhan & Assoc. d/b/a Express Personnel ("Express"), a temporary employment agency, and is also Chairman of the Independence Party of Minnesota, f/k/a the Reform Party of Minnesota ("IP"). In considering both motions, the facts are recounted (as they must be) from a fair reading of Ms. Morson's version of the evidence.

FILED JUN 6 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

Ms. Morson was hired as Mr. McCluhan's personal assistant in June 1999. (See Pl.'s Mem. In Supp. of Mot. to Amend the Compl. at 2-3 ("Pl.'s Supp. Mem."); see also Pl.'s Mem. In Opp'n to Mot. Summ. J. at 2-3 ("Pl.'s Opp'n Mem.").) Her primary duty was to assist Mr. McCluhan with his IP and Express obligations. (Pl.'s Opp'n Mem. at 2-4.) Although Ms. Morson performed several administrative tasks involving the IP, she performed those duties in her capacity as Mr. McCluhan's personal assistant and was compensated by Express. (Id.)

According to Ms. Morson, she was continually harassed by Mr. McCluhan during her employment. For example, he: (1) regularly called her a "slut", "whore" and a "little bitch"; (2) told her that "women were good for only one thing;" (3) stared down her shirt at her breasts; (4) told her that she would not have a job if she cut her hair; and (5) forcibly grabbed her buttocks and tried to kiss her. (Id.) Near the end of July 1999, Mr. McCluhan and Ms. Morson attended the IP National Convention in Dearborn, Michigan. (Id.) Although Mr. McCluhan initially told Ms. Morson that she would have to pay her own expenses to Dearborn, he did pay for her travel costs. (Id.) When they arrived in Dearborn, Ms. Morson had to argue with Mr. McCluhan to get her a separate room, endure his disparaging sexual remarks and physically fend off his sexual advances. (Id.) A few days after they returned from the convention, Ms. Morson was terminated. (Id.)

## II. CONCLUSIONS OF LAW

### A. The Independence Party's Summary Judgment Motion [#17].

#### 1. Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th

Cir. 1987); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. However, if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. If the opposing party fails to carry that burden, summary judgment should be granted. See Celotex, 477 U.S. at 322.

**2. Legal Analysis**

The IP contends that it is entitled to summary judgment with respect to Plaintiff's federal and state claims because there are no genuine issues of material fact in dispute. (See Def.'s Mem. in Supp. of Mot. Summ. J. at 5-9 ("Def.'s Supp. Mem.").) Specifically, the IP argues that it: (1) is a volunteer organization; (2) does not meet the definition of employer under pertinent federal

and state laws; (3) did not employ either Mr. McCluhan or Ms. Morson; (4) cannot be held responsible for the manner in which Mr. McCluhan treats his employees; and (5) Title VII of the Civil Rights of 1964 ("Title VII") and the Minnesota Human Rights Act ("MHRA") are inapplicable to volunteer organizations because said organizations are incapable of controlling its members as an employer can. (See Def.'s Supp. Mem. at 5-9.)

Plaintiff's opposition to the motion for summary judgment centers on its contention that the IP was Ms. Morson's employer under Title VII and the MHRA. Specifically, Ms. Morson argues that: (1) Mr. McCluhan, as Chairman of the IP, had control over her duties; (2) much of her duties were devoted to IP business; (3) much of the harassment occurred while she was performing services for the IP; and (4) the IP was her employer under the loaned servant doctrine. (See Pl.'s Opp'n Mem. at 7-11.)

**(a) Title VII's Jurisdictional Requirements**

Title VII protects against illegal discrimination against individuals in compensation, terms, and conditions or privileges of employment. Under Title VII, Ms. Morson must establish, for jurisdictional purposes, that the IP falls within the statutory definition of "employer" provided in 42 U.S.C. § 2000e(b) and that she is personally entitled to relief under the statute because she has an employment relationship with the IP as required by 42 U.S.C. § 2000e(f). 42 U.S.C. § 2000e(b) defines employer as "[a] person engaged in an industry effecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." Numerous courts have held that volunteers do not constitute employees for Title VII purposes. See Smith v. Berks Comty. Television, 657 F. Supp 794, 796 (E.D. Pa. 1987); Hall v. Delaware Council on Crime & Justice, 780 F. Supp. 241, 244 (D. Del.),

aff'd, 975 F.2d 1549 (3d Cir. 1992).

In the instant case, Defendant IP argues that it is entitled to summary judgment because the statutory section under which Ms. Morson has brought her action, 42 U.S.C. § 2000e does not extend jurisdiction over an employer with less than 15 employees. The IP has presented affidavits from its Vice Chair, Treasurer, and Secretary Treasurer establishing that the IP is indeed a volunteer organization and has never employed any person. (See Aff. of Julie Shortridge; Aff. of Dick Deitz & Aff. of Kim Ehlers.)

Ms. Morson has failed to present any evidence supporting or establishing a question of fact with respect to whether the IP had the requisite number of employees under Title VII. In fact, Ms. Morson's only opposition to this argument is her contention that the IP's conclusory and boilerplate affidavits are insufficient to sustain the motion for summary judgment. This Court rejects this argument and will not presume a genuine issue of material fact merely because otherwise undisputed evidence looks suspicious and unreliable to Plaintiff.

In viewing the evidence in the light most favorable to Ms. Morson, this Court finds that the IP does not have the requisite number of employees to meet the definition of "employer" under Title VII. While this Court does not condone Mr. McCluhan's alleged conduct, there is no genuine issue of material fact concerning whether the IP can he held accountable under Title VII. Accordingly, this Court will recommend that thc IP's motion be granted.

**(b) State Law Claims**

This Court can exercise jurisdiction over common law and state law claims when the state and federal claims arise from the same nucleus of operative fact. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, the Supreme Court has cautioned

against exercising jurisdiction over pendent state law claims when a federal claim is dismissed prior to trial. (Id. at 726.) Consequently, because this Court has disposed of the Title VII claim by recommending summary judgment before trial, the Court should not exercise jurisdiction over Ms. Morson's pendent state and common law claims against the IP.

The complaint should be dismissed without prejudice as to The Independence Party.

**B. Plaintiff's Motion to Amend the Complaint to Assert a Claim for Punitive Damages [#27].**

**1. Standard of Review**

In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the laws of the State of Minnesota, must generally conform to the requisites of Minn. Stat. §§ 549.191 and 549.20. See Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994); Olson v. Snap Prod., Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998). Under Minn. Stat. § 549.191, plaintiffs seeking to assert a punitive damage claim must first obtain the leave of the Court to do so, based upon a *prima facie* showing of entitlement. See Olson, 29 F. Supp.2d at 1034. "The plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." See Hammond v. Northland Counseling Center, Inc., No. Civ. 5-96-353, 1998 WL315333 at *7 (D. Minn. Feb. 27, 1998).

If the Court finds "*prima facie* evidence in support of the motion, the [C]ourt shall grant the moving party permission to amend the pleadings to claim punitive damages." Minn. Stat. § 549.191. *Prima facie* evidence is that evidence which, if unrebutted, would support a judgment in that party's favor. See Olson, 29 F. Supp.2d at 1034 (citations omitted). Under the strictures of Minn. Stat. §

549.191, the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for Entry of Judgment as a Matter of Law. Id.; see also Federal Rules of Civil Procedure 50(a). "Thus, in reaching such a determination, the Court makes no credibility rulings, nor does the Court consider any challenge, by cross-examination or otherwise, to Plaintiff's proof." See Olson, 29 F. Supp.2d at 1034 (citations omitted).

In evaluating the existence of a *prima facie* showing for the assertion of a claim for punitive damages, the Court must recognize that punitive damages are intended to punish a defendant, or to make an example of a defendant's wrongdoing, and not to compensate the plaintiff who has already been compensated. Id. at 1035. As a consequence, punitive damages may only be awarded when a defendant's conduct reaches a threshold level of culpability. Id. Accordingly, "[a] mere showing of negligence is not sufficient; instead, the conduct must be done with malicious, willful, or reckless disregard for the rights of others." See Olson, 29 F. Supp.2d at 1035 (citations omitted).

Minn. Stat. § 549.20 (1)(a) provides that "[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." The term "deliberate disregard" is comprehensively defined in the statute, as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> > (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20 (1)(b). "Where the evidence is sufficient to permit the jury to conclude that it

is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others, the 'clear and convincing' standard is satisfied." See Olson, 29 F. Supp.2d at 1035-36. Ultimately, when presented with a motion for leave to assert a punitive damage claim, the Court must do more than "rubber stamp" the allegations in the motion papers. Id. at 1036 (citations omitted). The Court must independently ascertain whether there exists *prima facie* evidence that defendant acted with a deliberate disregard of the rights or safety of others.

**2. Legal Analysis**

In the instant case, plaintiff alleges a sexual battery against defendant McCluhan. The evidence presented by the plaintiff would easily enable a fact finder to conclude that Mr. McCluhan deliberately disregarded Ms. Morson's rights when he twice attempted to forcibly kiss her while grabbing her buttocks. McCluhan's persistent harassing behavior, disparaging and sexist remarks, and sexually suggestive comments, further contribute to the conclusion that plaintiff has met her burden to make a *prima facie* case that defendant's conduct amounted to a deliberate disregard of Ms. Morson's rights or safety.

Ms. Morson's *prima facie* evidence demonstrates that she is entitled to allege a claim for punitive damages against Mr. McCluhan, in his individual capacity, and Richard McCluhan & Associates, Inc.

The Court rejects defendants' contention that plaintiff's motion was untimely. Moreover, there is nothing in Wirig v. Kinney Shoe, 461 NW2d 374 (Minn. 1990) which would preclude plaintiff from asserting a claim for punitive damages. The Court expresses no opinion on the question of what impact that case would have on any verdict that might be rendered.

Accordingly, Plaintiff's motion to amend the complaint to assert a claim for punitive damages

against the remaining Defendants is granted.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Independence Party's Motion for Summary Judgment [#17] be **GRANTED** with respect to the Title VII claim, and that the Court not exercise jurisdiction over pendent state and common law claims. The complaint should be dismissed without prejudice as to The Independence Party.

## IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

2. Plaintiff's Motion to Amend the Complaint to Assert a Claim for Punitive Damages Against Richard McCluhan and Richard McCluhan & Associates [#27] is **GRANTED**.

DATED: June 5, 2001

Franklin L. Noel
FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.